IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID DOGGETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 2495 |
| ) | |
| COUNTY OF COOK and CYNTHIA ) | |
| PRZISLICKI, in her official and ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff David Doggett ("Doggett") brings the present three-count Second Amended Complaint alleging a violation of his First Amendment rights under 42 U.S.C. § 1983, breach of contract, and promissory estoppel against Defendants Cook County ("Cook County" or the "County") and Cynthia Przislicki ("Przislicki").[1]  Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).  For the following reasons, the Court grants Defendants' motion in its entirety.

## BACKGROUND

**I.     Parties**

In June of 1992, Cook County hired Doggett as a part-time emergency room technician ("ERT") at Cook County Hospital, now known as John H. Stroger, Jr. Hospital of Cook County.

---

[1] The Second Amended Complaint Doggett attached to his Motion For Leave to File the Second Amended Complaint (*see* R. 24-1) is different from the Second Amended Complaint Doggett filed after the Court granted his motion.  (R. 27-1.)  The Court relies on the Second Amended Complaint at docket number R. 27-1.

(R. 56-1, Defs.' Rule 56.1 Stmt. Facts, ¶ 5.) Originally, Doggett's schedule was from 3:00 p.m. to 11:00 p.m. with a minimum of 20 hours per pay period. (*Id.*) When the County hired Doggett, he was also a full-time employee at the Chicago Fire Department. (R. 68-1, Pl.'s Rule 56.1 Add'l Stmt. Facts ¶ 12.) In 1993, Doggett became a full-time ERT at Cook County Hospital. (Defs.' Stmt. ¶ 9.) As an ERT, Doggett's job duties included stocking, taking patients' vital signs, lab transport, patient transport, monitoring of patients, and the movement of patients within the emergency room. (Defs.' Stmt. ¶ 6; Pl.'s Stmt. ¶ 1.) At some point between 1993 and 1995, Doggett became a member of the Service Employees International Union ("SEIU"). (Defs.' Stmt. ¶ 11; Pl.'s Stmt. ¶ 3.) In 2003, Doggett became a union representative. (Pl.'s Stmt. ¶ 3.)

In October of 2001, Defendant Przislicki became the Director of Emergency Nursing, Pediatric Emergency Nursing, and the Observation Unit at Cook County Hospital. (Defs.' Stmt. ¶ 12.) As Director, Przislicki is responsible for directing the activities of these departments and their coordinators to ensure that the patients coming through these departments receive excellent care. (*Id.* ¶ 13.) Przislicki supervises 275-300 employees in the job titles of nurse coordinator, assistant director of nursing, steno, administrative assistant III, clinical nurse II, clinical nurse I, licensed nurse practitioner, and ERT. (*Id.* ¶ 14; Pl.'s Stmt. ¶ 26.)

## II. Doggett's Memoranda to Przislicki

On May 20, 2004, Doggett wrote a memorandum to Przislicki complaining of patient confidentiality issues in the front triage area. (Defs.' Stmt. ¶ 27.) Attached to this memorandum was another memorandum to Przislicki; Keri Fei, Assistant Divisional Director; Dr. Simon, Department of Emergency Medicine Chairman; Dr. Levine; Nurse Coordinators - All Shifts; Birdge Givens, Labor Management; and Local 73, from the ERTs regarding patient care in the

front triage area. (*Id.*) Dr. Simon responded to Doggett's memorandum in writing addressing Doggett's and the other ERTs' patient confidentiality concerns. (*Id.* ¶ 28.)

On May 25, 2004, Doggett was working as the flow ERT, and thus had to insure that patients were taken to the proper area for treatment based upon their triage category. (*Id.* ¶ 15.) At that time, Doggett handled a patient that a nurse from the emergency room had walked to the resuscitation room. (*Id.* ¶ 16.) Thereafter, Doggett wrote a memorandum to Przislicki; Dr. Simon; James Dyson, Labor Relations; and Local 73 about this incident, indicating that patients should not be walked to the resuscitation room and that the individual nurse involved in this incident should be disciplined for his failure to follow proper policy. (*Id.* ¶ 17.) Doggett believed that it was necessary to complain about this practice to provide quality patient care. (*Id.* ¶ 18.)

Also in May 2004, Doggett wrote a memorandum to Przislicki claiming that a nurse – Joann Jariel – told him that she was going to write him up for his failure to respond to an overhead page when a patient had collapsed in the pharmacy and had to be taken to the resuscitation room. (*Id.* ¶ 20.)

On June 4, 2004, Roger Farquharson, a nurse coordinator, orally reprimanded Doggett because he did not take his 8:00 a.m. break on time. (*Id.* ¶ 22.) In a memorandum dated June 6, 2004, to Przislicki, Dr. Simon, Dyson, and Local 73, Doggett complained that the ERTs were assigned to take breaks at 8:00 a.m. and 12:00 noon, which conflicted with their task of taking patients' vitals at 8:00 a.m. and 12:00 noon. (*Id.* ¶ 23.) Przislicki received this memorandum on June 24, 2004 and responded in writing on July 1, 2004, stating that the nurse coordinators would adjust the break times to accommodate the taking of the patients' vitals every 4 hours. (*Id.* ¶ 24.)

3

On June 25, 2004, Doggett wrote a memorandum to Przislicki identifying concerns about the direct observation of psychiatric patients and the use of a specific patient room during shutdowns. (*Id.* ¶ 25.)

### III. Flex-Time

In 2004, Denise Little became the Staff Coordinator for the emergency room at Cook County Hospital and is responsible for preparing the schedule for the ERTs and nurses. (*Id.* ¶ 29.) Also in 2004, Little advised Przislicki that it was difficult to staff the emergency room with ERTs because of their flexible start times. (*Id.* ¶ 34; R. 72-1, Pl.'s Resp. Defs.' Stmt. Facts ¶ 34.) On June 21 and 22, 2004, Przislicki conducted meetings with the ERTs to discuss various issues, including flex-time scheduling. (Defs.' Stmt. ¶ 36.) At these meetings, Przislicki informed the ERTs that effective August 8, 2004, flex-time privileges would be canceled due to both the problem of scheduling the ERTs and the operational needs of the hospital. (*Id.* ¶ 37.) On July 21, 2004, Przislicki issued a memorandum to all ERTs confirming the cancellation of flex-time schedules effective August 8, 2004. (*Id.* ¶ 38.)

Nevertheless, on January 10, 2005, Doggett complained to Little because she denied his proposed schedule to work six days of the first week of a pay period and four days of the second week of the pay period. (*Id.* ¶ 30; Pl.'s Stmt. ¶ 7.) Further, Doggett asked Little to review the union's collective bargaining agreement ("CBA") and gave Little a copy of the CBA regarding overtime. (Pl.'s Stmt. ¶ 8.) Pursuant to Article III, Section 8 of the CBA for ERTs, flex-time schedules are granted for legitimate and compelling personal reasons when consistent with the operational needs of the hospital. (Defs.' Stmt. ¶ 35.) Also under the CBA, the employer may cancel or suspend flex-time privileges for legitimate operational reasons or due to misuse by employees. (*Id.*)

4

### IV. Absconded Patient

On December 24, 2004, Farquharson was the Nurse Coordinator for both the Observation Department and Emergency Department and Doggett was assigned to work from 7:00 a.m. to 3:00 p.m. (Defs.' Stmt. ¶¶ 39-41; Pl.'s Stmt. ¶ 9, 12.) On that same day, Farquharson testified that a patient had absconded from the hospital. (Defs.' Stmt. ¶ 42.) Moreover, Farquharson claimed that after the patient absconded, Doggett exited the hospital telling Farquharson that he was going to look for the patient. (Defs.' Stmt. ¶¶ 45, 46.) At his deposition, however, Doggett testified that the patient was never out of his care from the time he took over until the time the patient was transferred to another facility and that he never left the hospital. (Pl.'s Resp. ¶¶ 42, 45, 46; Pl.'s Stmt ¶ 13.) In addition, the parties dispute whether a clerk contacted Police Officer Caldwell to report that at 9:30 a.m. that morning, a patient was missing from Room 99. (Pl.'s Stmt. ¶¶ 14, 15.)

In the meantime, Farquharson called the missing patient's home to determine if the patient went there. (Defs.' Stmt. ¶ 48.) The parties dispute whether the patient's wife, Helen Phillip, told Farquharson that Doggett was at their home. (Defs.' Stmt. ¶ 49; Pl.'s Stmt. ¶ 16.) Farquharson further testified that he called Przislicki and notified her that Doggett's patient absconded and that Doggett was at the patient's house. (Defs.' Stmt. ¶ 55.)

### V. Termination of Doggett's Employment

After the missing patient incident, Przislicki recommended terminating Doggett's employment with Cook County Hospital. (*Id.* ¶ 59.) According to the Hearing Memorandum of Doggett's Discharge Appeal Hearing, the Cook County Hospital terminated Doggett's employment on February 7, 2005, because he violated various rules of employee conduct, including negligence in the performance of duties, misuse of patient's records, theft of

5

information from patient records, leaving his assigned place or areas of work without permission of his supervisor, and failure to work in accordance with Cook County policies. (*Id.* ¶ 58.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. at 255. The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F. 3d 921, 924 (7th Cir. 2004).

## ANALYSIS

**I.      First Amendment Claim**

The First Amendment protects freedom of speech and expressive conduct and generally prevents the government from proscribing such activities. *RAV v. City of St. Paul, Minn.,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). "It is by now well established that the government may not arbitrarily silence the constitutionally-protected speech of its employees.

Government workers do not forfeit their First Amendment rights simply by accepting public sector employment." *Wernsing v. Thompson,* 423 F.3d 732, 750 (7th Cir. 2005). Although public sector employees retain their First Amendment rights to free speech, a public employee does not possess unlimited rights of speech and expression on matters related to official responsibilities. *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004) (citing *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); *see also Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (employee's speech may be protected if matter of public concern).

In Count I of his Second Amended Complaint, Doggett claims that Defendants retaliated against him in violation of his First Amendment rights for sending his supervisors memoranda in which he commented on matters of public importance, such as safety violations. Defendants, on the other hand, argue that the Court must grant their summary judgment motion as to Doggett's First Amendment retaliation claim because Doggett was making these statements pursuant to his official duties, and thus was not speaking as a citizen for First Amendment purposes. *See Garcetti v. Ceballos*, ___U.S. ___, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

**A.** *Garcetti v. Ceballos*

In *Garcetti,* a deputy district attorney, who worked for the Los Angeles County District Attorney's Office, brought a First Amendment claim alleging that the District Attorney's Office retaliated against him after he wrote memoranda to his supervisors alerting them to inaccuracies in an affidavit supporting a search warrant. *Id*. at 1955-56; *see also Piggee v. Carl Sandburg Coll.,* 464 F.3d 667, 670 (7th Cir. 2006). After reviewing Supreme Court precedent involving employee speech beginning with the seminal case of *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the *Garcetti* Court

7

concluded that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1960; *see also Piggee,* 464 F.3d at 670. Thus, under *Garcetti* "before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job. Only when government penalizes speech that a plaintiff utters 'as a citizen' must the court consider the balance of public and private interests, along with the other questions posed by *Pickering* and its successors." *Mills v. City of Evansville, Ind.*, 452 F.3d 646, 647-48 (7th Cir. 2006).

### B. *Connick-Pickering*

When evaluating a Section 1983 claim for retaliation in violation of a public employee's First Amendment rights, the Court must determine if the employee has established (1) that his speech is constitutionally protected under the *Connick-Pickering* test, and (2) that his speech was a substantial or motivating factor in the retaliation. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006); *Carreon v. Illinois Dep't of Human Servs.*, 395 F.3d 786, 790-91 (7th Cir. 2005). "If the plaintiff establishes these elements, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have taken the same action in the absence of the protected speech." *Carreon*, 395 F.3d at 790.

### C. Doggett's Union Activities

Based on the holding in *Garcetti*, the Court must first determine whether Doggett's comments in the memoranda to his supervisors were made pursuant to his official duties or whether he was acting "as a citizen" expressing his concerns. Here, Doggett contends that as a union steward, he spoke out to management regarding topics such as patient confidentiality,

8

safety concerns, and over-time hours, among other issues. Indeed, the First Amendment protects certain union activities. *See Fuerst v. Clarke*, 454 F.3d 770, 774-75 (7th Cir. 2006). In *Fuerst*, the Seventh Circuit explained:

> Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff – his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer – the Supreme Court's recent decision in *Garcetti v. Ceballos*, ___ U.S. ___, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), is inapposite.

*Id.* at 774.

### D. Reasons for Doggett's Termination

Nevertheless, while Doggett's union activities might merit First Amendment protection, there is no evidence in the record that Doggett's memoranda to Przislicki and other Cook County Hospital management led to his termination. *See Carreon,* 395 F.3d at 794. According to the Hearing Memorandum of Doggett's Discharge Appeal Hearing, Cook County Hospital terminated Doggett's employment because he violated various rules of employee conduct, including negligence in the performance of duties, misuse of patient records, theft of information from patient records, leaving his assigned place or areas of work without permission of his supervisor, and failure to work in accordance with Cook County policies.

Meanwhile, Doggett does not provide any admissible evidence whether his First Amendment union activities were a reason for his termination, let alone establish that his speech was a motivating factor for his termination.[2] *See Ashman,* 438 F.3d at 784. Finally, Doggett

---

[2] Doggett's deposition testimony that Farquharson told him that he was "ticking a lot of people off" with his memoranda is hearsay which is inadmissible at summary judgment. *See Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Further, Doggett offers no hearsay exception to this testimony.

9

does not address Defendants' argument that they would have taken the same action, namely, terminated his employment, in the absence of any protected speech. *See Carreon,* 395 F.3d at 790.

Although the moving party bears the burden of establishing the lack of any genuine issue of material fact, *see Celotex Corp.,* 477 U.S. at 323, the non-moving party, in this case Doggett, must present definite, competent evidence to rebut the summary judgment motion. *See Butts*, 387 F. 3d at 924; *see also* Fed R. Civ. P. 56(e) (adverse party must set forth specific facts showing that there is a genuine issue for trial). Further, to survive summary judgment, Doggett must present credible evidence on all matters upon which he bears the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 322-23. Here, Doggett has not offered any evidence that his speech was a substantial or motivating factor in his termination. *See Carreon,* 395 F.3d at 791. Viewing the facts in a light most favorable to Doggett, he has failed to set forth a prima facie case of First Amendment retaliation. *See id.* The Court thus grants Defendants's summary judgment motion as to Doggett's First Amendment retaliation claim in Count I of the Second Amended Complaint.

**II.**     *Monell* **Claim**

In Count I of his Second Amended Complaint, Doggett also alleges that Defendants have a custom or policy of retaliating against employees "speaking out against a variety of unsafe Emergency Room practices existing at John Stroger Hospital." (R. 27-1, Second. Am. Compl. ¶ 15.) The Court construes Doggett's *Monell* claim against Przislicki in her official capacity as a claim against the County itself. *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

### A. Liability Under *Monell*

Under Section 1983, a government agency cannot be liable under the theory of respondeat superior. *Sornberger v. City of Knoxville, Ill.,* 434 F.3d at 1006, 1029 (7th Cir. 2006). As such, to establish a constitutional claim against the County, Doggett must show that (1) he suffered a deprivation of a federal right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, which (3) proximately caused his constitutional injuries. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006). Under the second requirement, Doggett must establish that an official custom or policy caused the deprivation of his constitutional rights. *Monell,* 436 U.S. at 690-91.

For the first time in his summary judgment memorandum, Doggett argues that he was deprived his constitutional right to property because he was denied overtime and was terminated. Doggett's argument states: "Plaintiff suffered a constitutional injury. Doggett was terminated before he could grieve his overtime concern. Plaintiff was deprived his constitutional right to property when he was denied overtime and terminated." (R. 69-1, Pl.'s Resp. to Summ. J. Mot., at 11.) Based on this argument, it appears that Doggett is bringing a substantive due process claim under the Fourteenth Amendment. Doggett, however, does not develop this argument explaining what facts are relevant to his claim nor does he cite any legal authority. Where, as here, a plaintiff fails to discuss the facts relevant to their claim, such perfunctory or undeveloped arguments are waived. *See Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006) (quoting and citing *Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) with approval).

Further, Doggett did not make any such allegations in his Second Amended Complaint,

and thus Defendants were not put on notice of this claim until after they had filed their motion for summary judgment. Granting Doggett leave to amend his Second Amended Complaint to include this new theory of liability – without any explanation as to its delay – would unduly prejudice Defendants. *See Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 861-62 (7th Cir. 2001). Finally, as discussed below, any amendment would be futile because Doggett's *Monell* claim ultimately fails even assuming he has established that he suffered a deprivation of his constitutional rights. *See id.* at 861. The Court thus denies any last minute attempt to add a new theory of liability at summary judgment. In sum, the constitutional deprivation at issue involves Doggett's First Amendment retaliation claim as alleged in the Second Amended Complaint. (*See* Second Am. Compl. ¶¶ 1, 12, 15.)

### B. Person with Final Policymaking Authority

Turning to Doggett's *Monell* claim and assuming, *arguendo*, that Doggett has established that he suffered a deprivation of his First Amendment rights, he has failed to set forth evidence creating a genuine issue of material fact under the second *Monell* requirement, namely, that an official custom or policy caused the deprivation of his rights. *See Monell,* 436 U.S. at 690-91. To show that an official custom or policy caused the violation of his First Amendment rights, Doggett must establish one of the following scenarios: (1) there was an express policy that, when enforced, causes a constitutional deprivation; (2) there was a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled that it constitutes custom or usage within the force of law; or (3) a person with final policymaking authority caused the constitutional injury. *Phelan*, 463 F.3d at 789; *see also Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Here, Doggett contends that it was Przislicki's custom to regard complaints given outside

of the chain of command as insubordination. Doggett also alleges that Przislicki "is a final decision and policy maker." (Second Am. Compl. ¶ 14.) Thus, Doggett is relying on the third factor, namely, that a person with final policymaking authority caused his constitutional injury. *See Phelan*, 463 F.3d at 789. First, Doggett has failed to argue or set forth evidence that Przislicki had final policymaking authority. *See Killinger v. Johnson,* 389 F.3d 765, 771 (7th Cir. 2004) (to have final policymaking authority, official must possess responsibility for making law or setting policy); *Rasche v. Village of Beecher,* 336 F.3d 588, 600 (7th Cir. 2003) (plaintiff must set forth authority to establish that, as a matter of state law, individual has final policymaking authority). Second, Doggett relies on a March 2006 incident in which Przislicki reprimanded another emergency room employee for speaking to the chairperson of the emergency department about the number of nurses in the Observation Unit. (Pl.'s Stmt. ¶ 28, Farquharson Dep. at 78-79.) Not only did this incident occur over a year after the County terminated Doggett's employment, there is no evidence that the reprimand involved the alleged constitutional injury at issue – Doggett's First Amendment rights. *See Phelan,* 463 F.3d at 789. As such, Doggett's *Monell* claim against the County fails. The Court therefore grants Defendants' summary judgment motion as to Doggett's *Monell* claim alleged in Count I of the Second Amended Complaint.

### III.    Individual Capacity Claim Against Przislicki

Doggett also sues Przislicki under Section 1983 in her individual capacity. Section 1983 creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States." *See* 42 U.S.C. § 1983; *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). For an individual to be liable under Section 1983, she must have caused or participated in the constitutional violation.

13

*Johnson,* 444 F.3d at 583; *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005).

Because Doggett failed to set forth evidence that his speech was a motivating factor in his termination, qualified immunity shields Przislicki from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005) (failure to establish violation of constitutional right dispositive in qualified immunity analysis). Because there are no genuine issues of material fact concerning Doggett's individual capacity claim against Przislicki, the Court grants Defendants' motion for summary judgment on Count I of the Second Amended Complaint.

## IV. Breach of Contract Claim

In Count II of the Second Amended Complaint, Doggett brings a breach of contract claim. Specifically, Doggett contends that he has a written employment contract based on memoranda to and from Jiles Taylor-George, the registered nurse who approved hiring him as a full-time ERT. Doggett further asserts that Defendants breached this employment contract because they prohibited him from starting his shift at 8:00 a.m. To prevail on a breach of contract claim under Illinois law, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) performance under the terms of the contract; (3) defendant breached the contract; and (4) plaintiff suffered an injury as a result of the defendant's breach. *Burrell v. City of Mattoon,* 378 F.3d 642, 651 (7th Cir. 2004); *Oliva v. Amtech Reliable Elevator Co.*, 366 Ill.App.3d 148, 152, 303 Ill.Dec. 358, 851 N.E.2d 256 (2006).

"Employment contracts in Illinois are presumed to be at-will and are terminable by either party; this rule, of course, is one of construction which may be overcome by showing that the parties agreed otherwise." *McInerney v. Charter Golf, Inc.,* 176 Ill.2d 482, 485, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1349 (1997). "An employee bears the burden of overcoming the

14

presumption of 'at will' employment by showing that the parties contracted otherwise." *Kiddy-Brown v. Blagojevich,* 408 F.3d 346, 363 (7th Cir. 2005)*; see also Hentosh v. The Chicago Med. Sch.,* 314 Ill.App.3d 1009, 1011, 248 Ill.Dec. 417, 734 N.E.2d 125 (2000) ("hiring and employment terms are presumptively subject to the will of the employer unless the parties specifically contract otherwise"). Under Illinois law, the statute of frauds requires that a contract for lifetime employment – which is essentially a contract for permanent employment – must be in writing. *McInerney,* 176 Ill.2d at 490-91.

Before addressing the parties' arguments, the Court notes that Doggett never explains how he was injured by Defendants' alleged breach – the last element in a breach of contract claim. *See Oliva,* 366 Ill.App.3d at 152. As discussed above, although Defendants have the burden of establishing that there are no genuine issues of material fact for trial at this procedural posture, *see Celotex Corp.*, 477 U.S. at 323, to survive summary judgment, Doggett must present credible evidence on all matters upon which he bears the burden of proof at trial, including the elements of his breach of contract claim. *See id*. at 322-23. Accordingly, Doggett's failure to argue or present any evidence of the injury element of his breach of contract claim is a basis for granting Defendants' summary judgment motion on Count II.

Nevertheless, for the sake of completeness, the Court turns to Defendants' argument that based on the statute of frauds, Doggett's breach of contract claim fails because he cannot establish the existence of a written employment contract. As mentioned, Doggett contends that the Taylor-George memoranda constitute a written employment contract. The memoranda at issue include Doggett's May 14, 1993 schedule request, Taylor-George's handwritten response, and Taylor-George's June 24, 1993 memorandum to Doggett changing his status from part-time to full-time. (Defs.' Stmt. ¶¶ 7-10.) These memoranda do not discuss Doggett's pay, benefits,

or other terms of his employment.

For a binding employment contract to exist under Illinois law, the contract must be clear and definite and supported by consideration. *Sembos v. Philips Components,* 376 F.3d 696, 704 (7th Cir. 2004); *McInerney,* 176 Ill.2d at 485. In this case, the memoranda do not provide clear and definite terms, such as a definite assurance of continued employment, salary, or benefits, and thus the memoranda do not meet the "clear and definite" requirement under Illinois law. *Sembos,* 376 F.3d at 704. As such, Doggett has not set forth evidence raising a genuine issue of material fact that he has a written permanent employment contract, *see McInerney,* 176 Ill.2d at 490-91. Thus, there are no genuine issues of material fact concerning the first element of a breach of contract case – the existence of a valid and enforceable contract. The Court grants Defendants' summary judgment motion as to Doggett's breach of contract claim in Count II of the Second Amended Complaint.

## V. Promissory Estoppel Claim

In the alternative to his breach of contract claim, Doggett alleges that Defendants made an unambiguous promise to him that his work day would begin at 8:00 a.m. for four times each pay period and that he could work more weekends and holidays than required by the Adult Emergency Services Department. To establish promissory estoppel under Illinois law, Doggett must show that (1) Defendants made an unambiguous promise to him, (2) he relied on the promise, (3) his reliance was expected and foreseeable by Defendants, and (4) he relied on Defendants' promise to his detriment. *Dumas v. Infinity Broad. Corp.,* 416 F.3d 671, 677 (7th Cir. 2005) (citing *Quake Constr. v. American Airlines,* Inc., 141 Ill.2d 281, 309-10, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990)); *see also Sembos,* 376 F.3d at 704. "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but

16

consideration is lacking." *Dumas,* 416 F.3d at 677 (citing *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 57 Ill.2d 120, 124, 311 N.E.2d 138 (1974)). Thus, to succeed on a claim of promissory estoppel, Doggett must present written evidence of an "unambiguous promise" which, but for the existence of consideration, constitutes an enforceable employment contract under Illinois law. *See Dumas,* 416 F.3d at 677.

As discussed above, Doggett has failed to set forth evidence creating a genuine issue of material fact that the Taylor-George memoranda constitute an enforceable employment contract under Illinois law. Specifically, these memoranda do not provide clear and definite terms, such as a definite assurance of continued employment, salary, or benefits, as required under Illinois law, and thus do not create an issue of material fact. *Sembos,* 376 F.3d at 704; *see McInerney,* 176 Ill.2d at 490-91. Furthermore, under Illinois law, the statute of frauds applies to the doctrine of promissory estoppel. *Dumas*, 416 F.3d at 678 ("statute of frauds applies with equal force under either a breach of contract or promissory estoppel theory under Illinois law"); *see also Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 549 (7th Cir. 2005) (same). Accordingly, any argument that Defendants made oral promises to Doggett as a basis of his promissory estoppel claim must also fail.

Because the absence of the essential elements of a contract foreclose Doggett's promissory estoppel argument, *see Dumas,* 416 F.3d at 678, Doggett's promissory estoppel claim fails. The Court thus grants Defendants' motion for summary judgment as to Count III of the Second Amended Complaint.

## **CONCLUSION**

Based on these reasons, the Court grants Defendants' Motion for Summary Judgment.

Dated: November 3, 2006

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**